**AD HOC COMMITTEE TO SAVE HOMER G. PHILLIPS HOSPITAL, et al., Plaintiffs,**

v.

**CITY OF ST. LOUIS, et al., Defendants.**

**No. 90–1988C(6).**

United States District Court, E.D. Missouri, E.D.

July 13, 1992.

William P. Russell, St. Louis, Mo., for plaintiffs.

David Bohm, Asst. City Counselor, Joseph Moore, Asst. U.S. Atty., St. Louis, Mo., for Secy. of EHS.

Grover Hankins, Wendy Pailen, Janice Orr, Frank Smith, Jean Simontitsch, Dept. of HHS, Office of General Counsel, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION

GUNN, District Judge.

This matter is before the Court on the merits of plaintiffs' claims after a two-day consolidated class action hearing and non-

jury trial.[1] The Court having considered the pleadings, the testimony of the witnesses, the deposition testimony and the documents in evidence, and being fully advised in the premises, makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

Plaintiffs, several black, and unemployed persons, living on the north side of the City of St. Louis and the Ad Hoc Committee to Save Homer Phillips Hospital and all Public Hospitals (Ad Hoc Committee), an unincorporated association of St. Louis citizens, bring this proposed class action for declaratory and injunctive relief and damages against the City of St. Louis (City), Vincent Schoemehl, Jr., the Mayor, Dian Sharma, the Commissioner of Health, Dr. William Kincaid, the Director of the Department of Health and Hospitals for the City of St. Louis, the Secretary of Health and Human Services (Secretary) and other defendants.

Plaintiffs move for class certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. Plaintiffs seek to certify two classes: one consisting of all black, hispanic and indigent residents of the City who use, have used or will use Homer G. Phillips Hospital (Homer G.) and who are, have been or will be injured by the creation, expansion or consolidation of a segregated hospital system and by the inadequacy of the substituted health services as furnished by St. Louis Regional Medical Center (Regional) for the causes of action under Title VI of the Public Health Service Act, 42 U.S.C. § 291 et seq. and 42 U.S.C. § 1983. The other class consists of handicapped and indigent, black and hispanic residents of the City who use, have used or will use the facilities at Homer G. and who are, have been or will be injured by the replacement, removal and consolidation of acute inpatient medical care and facilities after the closure of Homer G. and the removal of services to City Hospital No. 1 or Max Starkloff (Starkloff) and are continued to be injured by the City's transfer of such services to Regional

for the causes of action under § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendants oppose this motion on the grounds that the strictures of Rule 23 have not been met. For the reasons stated below, plaintiffs' motion to be certified as a class shall be denied.

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following four prerequisites to certification of a class action:

(1) numerosity—that is, the class must be so "numerous that joinder of all members is impracticable;"

(2) commonality—that is, there must be present "questions of law or fact common to the class;"

(3) typicality—that is, the claims or defenses of the class representative must be "typical of the claims or defenses of the class;" and

(4) adequacy of representation—that is, the class representative must be in a position to "fairly and adequately protect the interests of the class."

To certify an action as a class action, the person or persons seeking to represent the class must satisfy the four prerequisites of numerosity, commonality, typicality and adequacy of representation as outlined in Rule 23(a) and the requirement that the class falls within one of the subcategories of Rule 23(b). Fed.R.Civ.P. 23(a) and (b). The Court has broad discretion in determining whether an action may be maintained as a class action. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980).

■ The threshold inquiry in any determination of class certification is identification of the parameters of the proposed class. If a class is so vague that it is not susceptible to ready identification, problems may arise regarding the provision of notification to class members, the binding effect of any judgment rendered in the case and the general concerns of propriety of an overly large class. *See generally General Tel. Co. of Southwest v. Falcon,*

---

**1.** On July 30, 1991, through August 1, 1991, the Court held a combined hearing on the merits of the case and the appropriateness of class certification after counsel waived a separate hearing on the class certification on July 30, 1991.

457 U.S. 147, 160–61, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Plaintiffs contend that after a review of the preliminary information of the 1990 profile report of selected census tracts in the Homer G. catchment area, approximately 64,000 residents have been or will have been denied access to medical treatment and services as a result of the closure of the acute inpatient services at Homer G.

■ Rule 23(a) first requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). The Court must make the determination of whether a class is sufficiently large so as to render joinder of all its members impracticable in light of the particular circumstances of the case. *Arkansas Educ. Ass'n v. Board of Educ. of Portland, Arkansas School Dist.,* 446 F.2d 763, 765 (8th Cir.1971). There is no bright-line numerical test by which the Court can determine when this numerosity requirement is satisfied. *Boyd v. Ozark Air Lines, Inc.,* 568 F.2d 50, 54 (8th Cir. 1977). The key to determining whether the numerosity requirement of Rule 23(a)(1) is satisfied rests on the impracticability of joining potential class members. Satisfaction of the numerosity prong does not require that joinder be impossible, but only that plaintiffs will suffer a strong litigational hardship or inconvenience if joinder is required. *Arkansas Educ. Ass'n,* 446 F.2d at 765. Accordingly, in view of the potential size of the class and the difficulty in joinder, the Court finds that the numerosity requirement of Rule 23(a)(1) is satisfied.

■ The second requirement of Rule 23(a) is that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Rule 23(a)(2) does not require, however, that all questions of law or fact raised in the litigation be common; there need be only a single issue common to all members of the class. *Alexander Grant & Co. v. McAlister,* 116 F.R.D. 583, 587 (S.D. Ohio 1987).

■ In this case, plaintiffs maintain defendants have engaged in a course of conduct which affects each class member's access to medical treatment and services. Although the Court agrees with plaintiffs' assertion that there are thousands of black persons, minorities, handicapped persons and indigent persons living in north St. Louis, the Court finds that plaintiffs failed to establish during the hearing how such persons have received inadequate medical treatment and services from the outpatient clinic at Homer G. and/or the acute care facility at Regional and how such persons have been denied equal access to affordable health care and hospital facilities. The Court concludes that plaintiffs have failed to satisfy all of the prerequisites of Rule 23(a) by failing to demonstrate the existence of any discernable number of potential class members who have been injured or have received inadequate medical treatment as a result of the closure of Homer G.'s acute medical services and Starkloff or the operation of Regional and the City's contracting with Regional for acute care services.

■ The third prong of Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). This typicality prerequisite guarantees that the class representatives share the issues common to other class members. The issue is whether plaintiffs suffer the same sort of injuries and possess sufficient similarity of interests to make them proper class representatives. Plaintiffs who purport to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975)). The Court finds that plaintiffs have failed to overcome this requirement by their failure to prove during the hearing how any plaintiff has been denied equal access to medical treatment and services.

■ The fourth requirement of Rule 23(a) provides that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Plaintiffs purport to represent two classes who have allegedly suffered wrongs that they apparently have not. The Court concludes that plaintiffs, therefore, are not members of the class they seek to represent. *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

As the Court finds the proposed classes have failed to satisfy the strictures of Rule 23, it declines to consider whether plaintiffs have satisfied at least one of the criteria set forth in Rule 23(b).

■ Plaintiffs' failure to meet all the strictures of Rule 23(a) is not the only reason the Court declines to certify the proposed class. Injunctive and declaratory relief is moot under the circumstances, because Homer G. closed in 1979 and Starkloff closed in 1985. Consequently, injunctive relief would be futile, and a class action under Rule 23(b)(2) is inappropriate. *Hammons v. Folger Coffee Co.,* 87 F.R.D. 600, 602 (W.D.Mo.1980). Moreover, "[w]hen declaratory and injunctive relief is sought on behalf of a class, and when the benefits of the relief sought will benefit all members of a proposed class, a court may exercise its discretion and decline to certify the class." *Women's Health Center of West Co. v. Webster,* 670 F.Supp. 845, 852 (E.D.Mo.1987), *aff'd on other grounds,* 871 F.2d 1377, 1384 (8th Cir.1989). The Court concludes that there is no need to permit the case to proceed as a class action in light of the requested relief, if granted, inuring to the benefit of all of the members of the proposed class.

■ Plaintiffs allege violations of 42 U.S.C. §§ 291, 246, 29 U.S.C. 1320a–1, 1983 and 2000d and 29 U.S.C. § 794 in their complaint and set forth 28 U.S.C. §§ 1331, 1343 and 1361 and 5 U.S.C. §§ 702 and 703 as their jurisdictional bases. Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

Plaintiffs challenge the alleged existence and expansion of segregated and unequal hospital facilities financed and operated by the City and the disbursement of federal financial assistance granted to the City by the Secretary. Plaintiffs contend that the consolidation and the relocation of acute health and outpatient care and equipment from Homer G. and the transfer of such services to St. Louis Regional Medical Center (Regional) created a disproportionate burden on plaintiffs and resulted in disparate impact on the plaintiff population. Plaintiffs further contend that the failure of the Secretary to timely investigate and to properly administer the expenditure of federal funds in the health and hospital delivery system in the City constitute a denial of due process and equal protection under the Fifth and Fourteenth Amendments.

The Court notes that the record before this Court does not contain a showing of how the named plaintiffs have themselves been injured by the closure of Homer G. and the consolidation and the relocation of acute health and outpatient care to Regional.[2] *Urban Contractors Alliance v. Bi-State Dev. Agency,* 531 F.2d 877, 881 (8th Cir.1976) (citing *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975)). Instead, plaintiffs at trial alleged that injury had been suffered by other, unidentified persons and that they purported to represent such persons. The record is devoid of any testimony concerning how any of the named plaintiffs were injured or denied equal access to health services as a result of the City's contracting for medical services with Regional and closing Homer G.'s acute care services. At trial Helen Floyd, a diabetic, testified that the Homer G. clinic and the Courtney clinic are available to her and offer the medical services she needs for treatment of her medical condition. Moreover, the Court

**2.** The Court notes that Regional is located on the northwestern edge of the City on a major arterial route approximately three miles from the Homer G. location and is easily accessible by public transportation. In 1986 the City contracted with Regional to operate the Courtney, Florence Hill, Homer G. and Starkloff clinics, the City's comprehensive primary care clinics.

notes that on June 30, 1988, the Secretary found that Regional provided health care in compliance with 29 U.S.C. § 794 and Title VI.

Emergency Medical Services (EMS), the operator of the City's life support vehicles, is provided free of charge to all indigent residents of the City. EMS vehicles will transport patients in need of hospitalization to any hospital located within the City, or to St. Mary's or Christian Northeast/Northwest Hospitals in St. Louis County, as directed by the patient who states a preference. Both Helen Floyd and Cleo Willis, Sr. testified that they had been transported for emergency treatment by EMS ambulances and neither one had any complaint with respect to the response time or the treatment by ambulance personnel. The Court concludes from the record before it that the City provides adequate health care services to the indigent population of the City by contracting with Regional to provide acute, emergency and other medical care services and to operate the comprehensive primary care clinics.

■ The Court further concludes that plaintiffs' failure to allege how they were personally injured or denied medical care by defendants' conduct demonstrates their lack of standing. Article III, § 2 of the Constitution limits this Court's jurisdiction to cases or controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980).

The standing of a plaintiff is a part of the case and controversy requirement. Plaintiffs fail to allege personal injury suffered as a direct result of having been denied equal treatment fairly traceable to defendants' allegedly discriminatory conduct and likely to be redressed by their requested relief. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). This Court is without power to decide questions that cannot affect the rights of the parties in a pending case. *Carson v. Pierce*, 719 F.2d 931, 933 (8th Cir.1983).

In its constitutional dimension, standing imports justiciabililty: whether the plain-

tiff has made out a "case or controversy" between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.
*Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis in original) (citing *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

■ Although an association may maintain a suit for its members, the standing of the Ad Hoc Committee to sue defendants must be examined separately. *Carson v. Pierce*, 719 F.2d at 933. To have standing, the members of the association must have suffered some injury suffered as a direct result of defendants' conduct since there was no showing of direct and palpable injury to the Ad Hoc Committee itself. *Id.* Plaintiff Ad Hoc Committee fails to satisfy the requirements of representational standing as outlined in the Supreme Court case of *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). The Supreme Court in *Hunt* delineated the following requirements for representational standing as follows:

[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. at 343, 97 S.Ct. at 2441. To satisfy the first requirement, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that

would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin,* 422 U.S. at 511, 95 S.Ct. at 2211–12.

The Court concludes that plaintiff Ad Hoc Committee has failed to meet this first requirement, because plaintiff has not shown that its members would have standing to sue in their own right. The Ad Hoc Committee is defined in the complaint as "an unincorporated association of St. Louis citizens, established for the purpose of representing the interest of indigent citizens of St. Louis." Listed as members of the Ad Hoc Committee are beneficiaries of Medicaid and Medicare residing in North St. Louis who used Homer G. and allegedly were harmed by the relocation of medical facilities. In fact, apart from the plaintiffs listed in the complaint, Adeowale Walle Amusa was the only additional member of the Ad Hoc Committee identified at trial. The membership of the Ad Hoc Committee is allegedly comprised of individuals who were "detrimentally affected by the removal of the hospital facilities, and have not the resources to pay for health services, nor access to adequate health services." Neither the complaint nor the record at trial identifies any of the members of the Ad Hoc Committee who were personally injured or denied equal access to and adequate medical care as a result of the closure of Homer G. or the contracting of medical services with Regional. The Court therefore concludes that plaintiff Ad Hoc Committee has failed to allege sufficient facts to establish standing.

### JUDGMENT

Findings of fact and conclusions of law dated this day are hereby incorporated into and made part of this judgment.

IT IS HEREBY ORDERED that plaintiffs' motion to be certified as a class shall be and it is denied.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiffs recover nothing from defendants.