Celia L. HALE and Gary McDowell, et al, Respondents,

v.

WAL–MART STORES, INC., et al., Appellants.

No. WD 66162.

Missouri Court of Appeals, Western District.

June 12, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2007.

Application for Transfer Denied Sept. 25, 2007.

Kurt D. Williams, Kansas City, MO, for Appellants.

Robert L. Ward, Counsel, Kansas City, MO, and Gerald L. Bader, Jr., Co-counsel, Boulder, CO, for Respondent, Celia Hale.

George A. Barton, Counsel, and Charles F. Speer, C-counsel, Kansas City, MO, for Respondent, Gary McDowell.

Before VICTOR C. HOWARD, C.J., HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PATRICIA A. BRECKENRIDGE, PAUL M. SPINDEN, JAMES M. SMART, JR., JOSEPH M. ELLIS, THOMAS H. NEWTON, RONALD R. HOLLIGER, LISA WHITE HARDWICK, JJ. and GENE R. MARTIN, Sp. J.

THOMAS H. NEWTON, Judge.

Wal–Mart Stores, Inc. and Sam's Club (Wal–Mart) appeal an order of the Jackson County Circuit Court certifying two plaintiff-employee classes with four subclasses each in litigation involving claims that the company's employment policies and practices resulted in chronic understaffing which caused employees to miss promised breaks and to work off the clock without compensation. While this court believes that the circuit court did not abuse its discretion in granting class certification under Rule 52.08(b)(3),[1] because four of the eight subclasses are impermissibly defined as "opt in" classes and two of the four are impermissibly overbroad, we affirm in part, reverse in part, and remand with directions for the court to modify the subclass definitions.

## Factual and Procedural Background

The individually named plaintiffs were hourly at-will employees who worked in defendants' Missouri stores. Corporate rest break policy provided such employees with one or two fifteen-minute breaks depending on the length of their shift. These breaks were to be compensated.

Thirty-minute meal breaks, which are not compensated, are also provided to those working shifts of certain duration. The named plaintiffs have raised four types of claims: (i) the defendants failed to compensate them and other members of the class for missed rest breaks, or improperly forced the employees to miss their scheduled rest breaks; (ii) the defendants failed to compensate them and other class members when they worked through their lunch/meal breaks or improperly forced the employees to miss their scheduled lunch/meal breaks; (iii) the defendants required employees to work or remain on store premises off the clock (OTC) without compensation when managers failed to promptly let them out of locked stores or check out their cash registers after they had clocked out at the end of a scheduled shift; and (iv) defendants required employees to work OTC without compensation to complete assigned tasks after clocking out at the end of their regular shift or during a meal break.

The named plaintiffs alleged that hourly employees were not paid what they should have been paid because of company-wide practices and policies that require or result in systematic understaffing. They contend that staffing and overtime limits are enforced through Wal–Mart's corporate discipline policy and a bonus incentive plan for store managers that is based on strict payroll and staffing controls.[2] The plaintiffs claim they can show that wage abuse occurs, in part, by using time-clock records, because employees were required to "swipe" their identification cards through a

---

1. Rule references are to the Missouri Rules of Civil Procedure (2005).

2. Evidence introduced during the class certification hearing showed that store managers were required to reduce payroll, i.e., staffing, by a certain percentage from previous year levels or face discipline. These reductions were required regardless of sales, which generally dictated the level of an individual store's payroll; savings from payroll became profits to Wal–Mart.

time clock at the beginning and end of each shift, rest break, and meal break.[3] Databases that contain evidence of time edits subsequently made by personnel staff without back-up documentation will be used to prove the pervasive and company-wide nature of the payroll manipulation.[4] The named plaintiffs sought to certify a class consisting of:

> All current and former hourly employees of Missouri Wal–Mart Stores, Inc., including Wal–Mart Discount Stores, Wal–Mart Supercenters and Sam's Clubs, during the applicable period of limitations.[5]

The named plaintiffs filed their class action petitions and amendments thereto between August 2001 and July 2003. Among other matters, they brought claims for breach of implied contract, quantum meruit, and unjust enrichment. A seven-day evidentiary hearing on class certification issues occurred in July 2003, and, in November 2005, the circuit court ordered that the case proceed as a class action under Rule 52.08(b)(3) with two defined classes and four separate subclasses.[6] Wal–Mart sought this court's permission to appeal the class certification under Rule 52.08(f) and section 512.020(3)(a);[7] this court sustained the petition, staying the trial court proceedings during the pendency of the appeal.

**3.** In February 2001, Wal–Mart stopped recording rest break data with employees' card swipes.

**4.** Wal–Mart apparently had a process in place for hourly employees to correct errors in the time-clock entries that occurred when an employee forgot to "swipe out" for a break. The plaintiffs claim that personnel staff, under management's direction, regularly changed time entries without the appropriate documentation that would have been generated by this process.

## Standard of Review

Whether a particular action should proceed as a class action under Rule 52.08 is a matter that lies within the sound discretion of the trial court. *State ex rel. Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 (Mo. banc 2004). Accordingly, we review a class certification order for an abuse of discretion. *State ex rel. Am. Family Mut. Ins. Co. v. Clark,* 106 S.W.3d 483, 486 (Mo. banc 2003). This court will find an abuse of discretion only if the circuit court's "ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. It cannot be said that the trial court abused its discretion where reasonable persons could differ with the propriety of its ruling." *Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 410 (Mo.App. W.D.2000) (citations and internal quotation marks omitted).

"[W]e will err on the side of upholding certification in cases where it is a close question" because "Rule 52.08(c)(1) provides for de-certification of a class before a decision on the merits." *Dale v. DaimlerChrysler Corp.,* 204 S.W.3d 151, 164 (Mo.App. W.D.2006) (internal quotation marks and citation omitted). "Likewise, '[b]ecause class certification is subject to later modification, a court should err in favor of, and not against, allowing maintenance of the class action.'" *Id.*

**5.** There are 128 such stores in Missouri, and the class is estimated at approximately 200,-000 individuals.

**6.** The record on appeal consists of a 1600–page transcript and nearly 4,000 pages of exhibits, pleadings, affidavits, and deposition testimony.

**7.** Statutory references are to RSMo. (2000) and the Cumulative Supplement (2005), unless otherwise indicated.

While a number of courts have stated that in a doubtful case, "any error, if there is to be one, should be committed in favor of allowing the class action,"[8] there was a period when the federal class action rule was applied more restrictively. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1754 (3d ed.2005). Nevertheless, a balance has been achieved since the 1980s, and now the rule's requirements are construed in light of its objectives, i.e., "to provide for the expeditious handling of disputes and to allow a remedy for those for whom it would be unrealistic to expect to resort to individual litigation." *Id.; see also In re A.H. Robins Co.*, 880 F.2d 709, 729–40 (4th Cir.1989) (discussing history of rule's application and concluding that trend is once again to give the rule a liberal construction).

 Moreover, because Rule 52.08 is a procedural and not a substantive rule, the courts do not conduct an inquiry into the merits of the lawsuit when class certification is at issue. *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 377 (Mo.App. E.D. 2005). Thus, "[t]he issue is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether plaintiff has met the requirements for a class action." *Id.* While some evidence relating to the merits may be considered in determining whether the class certification prerequisites have been met, "the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* (internal quotation marks omitted).

## Legal Analysis

 For a class certification to be proper, it must meet all of the Rule 52.08 requirements. *Koger*, 28 S.W.3d at 410. The record must demonstrate, at a minimum, that (i) the class is so numerous that joinder of all members is impracticable (numerosity); (ii) there are questions of law or fact common to the class (commonality); (iii) the claims of the named plaintiffs are typical of the class claims (typicality); and (iv) the named plaintiffs will fairly and adequately protect the class interests (adequacy). Rule 52.08(a). In addition, the named plaintiffs must also satisfy one of the three requirements of Rule 52.08(b). The circuit court certified the class under Rule 52.08(b)(3), which requires the record to support a finding that common questions of law or fact predominate over questions affecting only individual class members and that a class action is superior to other methods of adjudication. Moreover, the certified class must meet two additional implied requirements: it must be capable of legal definition, and the representative parties must be members of the putative class. *Craft*, 190 S.W.3d at 379.

Wal–Mart contends that the circuit court erred in granting class certification because (i) the plaintiffs' claims are not typical of the claims of the class; (ii) common questions do not predominate over individual questions; (iii) a class action is

---

**8.** *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir.1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also Zapata v. IBP, Inc.*, 167 F.R.D. 147, 156 (D.Kan. 1996) (quoting *Esplin*, 402 F.2d at 99); *McEwen v. Digitran Sys., Inc.* 160 F.R.D. 631, 636 n. 4 (D.Utah 1994) (quoting *Esplin*, 402 F.2d at 101). Note that Missouri courts consider federal court interpretations of Rule 23 of the Federal Rules of Civil Procedure in addressing class certification issues under Rule 52.08, because our rule parallels its federal counterpart. *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735 n. 5 (Mo. banc 2004).

not superior to other available methods for the fair and efficient adjudication of the controversy; and (iv) the class definitions violate Rule 52.08(b)(3) in that the main classes and "opt out" classes are overly broad and the "opt in" classes are not statutorily authorized.[9]

### The Record Supports Typicality Finding

 Of the prerequisites, Wal–Mart challenges only the circuit court's determination as to typicality. Wal–Mart contends that the claims of the named plaintiffs are not typical of the class because the reasons for individual employees missing breaks differed. The named plaintiffs claim that Wal–Mart's argument is based on immaterial factual differences in the circumstances surrounding the plaintiffs' claims. We agree with the named plaintiffs.

 Under Rule 52.08(a)(3), the claims of the representative parties must be typical of the class claims. Typicality means that the class members share the same interest and suffer the same injury. *Koger*, 28 S.W.3d at 410. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *De-Boer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995). If the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory, factual variations in the individual claims will not normally preclude class certification. *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 457–58 (W.D.Mo.2004) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996)); *see also Owner–Operator Indep. Drivers Ass'n v. New Prime*, 213 F.R.D. 537, 543 (W.D.Mo.2002); *Lang v. Kan. City Power & Light Co.*, 199 F.R.D.

640, 647 (W.D.Mo.2001); *Dale*, 204 S.W.3d at 169. Typicality is designed to preclude class certification of actions "involving legal or factual positions of the representative class which are markedly different from those of other class members." *Dale*, 204 S.W.3d at 169 (internal quotation marks omitted) (quoting *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 77 (D.N.J.1993)).

As previously stated, the named plaintiffs allege that Wal–Mart's policies and practices resulted in chronic understaffing which caused them and other hourly employees to miss promised breaks and to work OTC without compensation, thereby increasing Wal–Mart's profits, i.e. unjust enrichment. Wal–Mart claims that a case-by-case assessment is required to adjudicate the unjust enrichment claim because the named plaintiffs "testified to unique experiences and [are] subject to unique defenses."

Wal–Mart focuses on the different circumstances surrounding the missed paid rest breaks, unpaid meal breaks, and the OTC labor. Wal–Mart provides, for example, Mr. McDowell's testimony about performing work OTC in a chicken suit for Wal–Mart during the store's gourmet night, which was a special event that occurred after regular operating hours. Wal–Mart claims that Mr. McDowell volunteered his services and management did not promise him pay. If the chicken suit performance were the only incident in which he worked OTC, his factual position would be markedly different from the other class members who worked OTC because it would not support a claim of uncompensated labor that is based on corporate scheduling schemes, as gourmet

9. We arranged the points to track the procedural chronology of class certification. In the brief, Wal–Mart addressed the class definiteness, common questions-predominance, superiority, and typicality.

night was that particular store's event. The chicken suit performance, however, was not the only incident in which he worked OTC. Mr. McDowell also testified that he would clock out for his scheduled meal and rest breaks and would resume his assigned tasks. Such testimony is similar to the other named plaintiffs who testified about covering shifts OTC, working during breaks, and/or working OTC while waiting for a store or customer service manager (CSM) to let them out of the closed store.

■■■ Wal–Mart also claims that there are several causes for the grievances because each store is managed independently from the other, as current Wal–Mart management testified. As this argument is a negation to the allegation that corporate policy of understaffing caused the grievances, we ignore it because, in class certification determination, the court assumes the named plaintiffs' allegations are true. *See Craft*, 190 S.W.3d at 377. In its decision to certify, the circuit court properly focused on the similarities between the named plaintiffs' grievances that breaks were not taken, meals were missed, and work was performed OTC because, as a result of alleged understaffing and other corporate labor schemes, management neither relieved the hourly employees for breaks nor provided the necessary co-workers to assist with their tasks.

At its essence, this is a case about an employer's obligation to compensate its employees for all the time worked. Wal–Mart's alleged understaffing and other corporate schemes is a common course of conduct, even if the uncompensated work performed by the class members may differ. The circuit court did not abuse its discretion in finding the named plaintiffs met the typicality prerequisite. Accordingly, this point is denied.

*The Record Supports Predominance Finding*

Wal–Mart contends that the questions of law or fact common to the class do not predominate over individual issues because (i) the adjudication of the allegations require individualized proof; (ii) the common questions do not materially advance resolution of the named plaintiff's claims; and (iii) statistical evidence to prove the claims and damages would violate its due process. The named plaintiffs claim that the individual issues do not predominate because whether Wal–Mart's policies and practices were systematically applied in a way that resulted in a loss of rest and meal breaks and work OTC is a common question that predominates over individual issues.

■■■■ A class that is certified under Rule 52.08(b)(3) must have "questions of law or fact common to the members of the class [that] predominate over any questions affecting only individual members." *Craft*, 190 S.W.3d at 381. "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Craft*, 190 S.W.3d at 382. It becomes a common question when that "same evidence will suffice for each member to make a prima facie showing." *Id.* According to the Missouri Supreme Court, "[t]he 'predominance' requirement … does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues…. The need for inquiry as to individual damages does not preclude a finding of predominance." *Am. Family*, 106 S.W.3d at 488 (citations and internal quotation marks omitted). The court further emphasized this point by noting, "A single common issue may be the overriding one in the litigation, despite the

fact that the suit also entails numerous remaining individual questions." *Id.* (internal quotation marks omitted).

The circuit court found that "all members of the class have been affected by the same alleged corporate-level conduct by the defendants—required and/or deliberate understaffing, required 'time-edits' and time record manipulation without verification, off-the-clock work resulting from overtime pay policies and corporate oversight," and, therefore, "have demonstrated large common questions of fact and law, which are common to all members of the proposed class." Specifically, it found that the named plaintiffs identified at least four common questions of law and fact:

Is Wal–Mart contractually obligated to pay the class for all time worked for Wal–Mart?

Is Wal–Mart contractually obligated to provide rest and meal breaks to the class?

Do Wal–Mart stores in Missouri have a systemic practice of understaffing?

Has Wal–Mart been unjustly enriched by not fully compensating its hourly employees for all time worked and failing to provide rest and meal breaks?

It found that while "some aspects of the claims may be individual in nature, when considering the numbers of hourly employees in the proposed class and the large-scale practices complained of, the Court is unwilling to conclude that individual issues predominate over common class issues."

■ First, Wal–Mart argues that the circuit court erred in finding common-question predominance because the elements of the plaintiffs' claims necessarily turn on the individual experiences of each hourly employee and those issues predominate over common ones. Specifically, Wal–Mart contends that the elements of unjust enrichment will overwhelm the proceedings because the elements can only be proven with individualized proof.[10] We disagree.

■ Contrary to Wal–Mart's representation, some courts have approved the certification of unjust enrichment claims.[11] More specifically, some courts have approved class certification of unjust enrichment claims against Wal–Mart. *See e.g. Braun v. Wal–Mart Stores, Inc. (Braun I )*, No. 19–C0–01–9790, 2003 WL 22990114 (Minn.Dist.Ct. Nov.3, 2003); *Braun v. Wal–Mart Stores, Inc. (Braun II )*, No. 3127, 2005 WL 3623389 (Pa.Ct.Com.Pl. Dec. 27, 2005). Hence, there is no law precluding class certification of unjust enrichment claims, which means a trial court does not abuse its discretion *per se* because it certifies an unjust enrichment claim.

---

**10.** Wal–Mart contends that the elements for the other causes of actions: quantum meruit and breach of implied-in-law contract are virtually identical to unjust enrichment so its argument covers the other claims too. We believe that the claims are separate causes of actions.

**11.** See, *e.g. Blue Cross/Blue Cross of Al. v. Wyeth Pharms., Inc.*, No. Civ.A.2003–6046–RSV, 2006 WL 1241019, at *1, *14 (Ala.Cir. Ct. Feb.27, 2006); *Artie's Autobody, Inc. v. Hartford Fire Ins. Co.*, No. X08CV030196141S, 2006 WL 2730143, at *1, *12 (Conn.Super.Ct. Aug.30, 2006); *Clark v.*

*TAP Pharm. Prods., Inc.*, 343 Ill.App.3d 538, 278 Ill.Dec. 276, 798 N.E.2d 123, 132–33 (Ill.App.Ct.2003); *N.Y. Career Guidance Servs., Inc. v. Wells Fargo Fin. Leasing, Inc.*, No. BER–L–1705–03, 2005 WL 1252315, at *1, *12 (N.J.Super.Ct. May 2, 2005); *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442, 456 (Ohio 1998); *Dearlove v. Genzyme Transgenics Corp.*, No. 1031, 2004 WL 3053701, at *1, *3 (Pa.Ct.Com.Pl. Dec. 28, 2004); *Best Buy Co. v. Barrera*, 214 S.W.3d 66, 71 (Tex.App.2006); *Southwestern Bell Tel. Co. v. Mktg. On Hold, Inc.*, 170 S.W.3d 814, 828 (Tex.App.2005).

■ In certain instances, an otherwise individualized claim can be proper for class certification if the plaintiffs offer common evidence to prove the elements of that claim. *See Craft*, 190 S.W.3d at 381–82. In *Craft*, the defendants similarly argued that the misrepresentation claims of the named plaintiffs required individualized proof and, therefore, were inappropriate for class certification. *Id.* at 382. The *Craft* court rejected the contention because the defendants' liability, as alleged in the petition, went to "the condition and labeling of the product at the time it was sold" and was not "dependent on each consumer's individual smoking behavior." *Id.* Likewise, the unjust enrichment claim does not go to the named plaintiffs' conduct but rather Wal–Mart's conduct. The named plaintiffs allege that Wal–Mart has been unjustly enriched because it generated profit from its purposeful and wrongful understaffing policy and "time edits" practices to the detriment of the named plaintiffs and others similarly situated. Characterized in this manner, the common evidence offered, if believed, would prove these general allegations. As such, the circuit court did not err in certifying the question: "Was Wal–Mart unjustly enriched?" *See Craft*, 190 S.W.3d at 377.

Nor are we persuaded that the circuit court abused its discretion because other jurisdictions have denied class certification of unjust enrichment claims against Wal–Mart. In the majority of those cases, the appellate courts upheld the trial courts and did not find an abuse of discretion. *See e.g. Harrison v. Wal–Mart Stores, Inc.*, 170 N.C.App. 545, 613 S.E.2d 322, 330 (2005) Likewise, we are upholding the circuit court's decision because it was not so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration.

Moreover, not all of those appellate courts rejected class certification for a lack of common-question predominance. For example, in *Wal–Mart Stores, Inc. v. Bailey*, 808 N.E.2d 1198, 1204 (Ind.Ct.App. 2004), the court reversed certification because "the class as defined should not have been certified." Yet, it stated: "Even though we have determined that the class as defined is not properly maintainable, the class may be redefined in order to sustain the lawsuit." *Id.* at 1207. In its conclusion, it suggested that the class be divided into subclasses and "that the class action be maintained for certain issues, such as whether Wal–Mart was unjustly enriched or whether certain elements of unjust enrichment were met, but that damages would have to be calculated on an individual basis." *Id.* Here, the circuit court's certification order complies with those suggestions. The above dicta suggest that the *Bailey* court would have affirmed this certification.

Finally, other trial courts have certified similar claims against Wal–Mart, characterizing the myriad reasons why an employee missed breaks and the accuracy of the evidence as an impermissible inquiry into the merits. *See e.g. Braun I*, 2003 WL 22990114 at \*2; *Braun II*, 2005 WL 3623389 at \*3. The litigation history of these claims suggests to us that reasonable persons differ as to the propriety of these claims for class certification, which negates the conclusion that the circuit court, here, abused its discretion. *See Koger*, 28 S.W.3d at 410.

■ In its second contention, Wal–Mart argues that the circuit court erred in finding predominance because the common questions will not advance resolution of the litigation. Missouri does not require that the common issues advance resolution of the litigation in order for them to predominate over the individual ones. As stated in

*Am. Family* and in the order, "the predominate issue need not be dispositive of the controversy or even be determinative of the liability issue involved." 106 S.W.3d at 488 (internal quotation marks omitted). Nevertheless, the common questions adopted by the circuit court will advance litigation.

■ In its third and final contention, Wal–Mart contends that the circuit erred in finding predominance because the named plaintiff's statistical evidence will violate its due process. The named plaintiffs contend that their claims will be proven with Wal–Mart's computer software and its statistics, internal audit reports, policies, and practices. Wal–Mart contends that statistical evidence alone will not prove why any particular break was missed or that the employee who missed the break had an expectation of additional payment because the record establishes that hourly employees perform a variety of distinct tasks, at different times, for different supervisors, in different stores, spread across a demographically diverse state, and, as such, each employee's interaction with a manager varies. As a consequence of the named plaintiffs using statistical evidence, Wal–Mart claims that it will be prevented from presenting the individualized proof on each individual class member's claim and to cross-examine those claimants that seek recovery against it. Wal–Mart raised these arguments to the circuit court, which found that Wal–Mart's "arguments go to the merits of plaintiffs' claims, rather than defeat the class action certification requirements." We agree.

The issue of why an employee missed a break or lunch is pertinent to an unjust enrichment claim. And although a myriad of reasons could explain these occurrences, those reasons do not prevent a predominance finding. In class certification determination, the named plaintiffs' allegations are accepted as true. *Craft,* 190 S.W.3d at 377. The named plaintiffs allege that they missed their breaks because of Wal–Mart's understaffing coupled with other corporate labor schemes such as editing payroll without an employee's permission and firing employees who work overtime without permission. As such, Wal–Mart's proffered possibilities of why an employee missed a break or lunch are defenses to their claim and, hence, concern the merits. The trial court has no authority to conduct a preliminary inquiry into the merits. *See Dale,* 204 S.W.3d at 178. The trial court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. Wal–Mart's defenses have nothing to do with whether the named plaintiffs have made out a prima facie case for the class.

The *Jackson* court in response to a similar argument stated, "Wal–Mart's argument ... ignores the [plaintiff's expert testimony] that the business strategy employed by Wal–Mart, in conjunction with the corporate culture expressly fostered by the company, resulted in a work environment wherein employees were compelled to perform work [OTC] and to forgo rest and meal breaks," and that:

employees would do so without 'a second thought,' because it was simply a part of the culture in which they worked. Given this premise and the testimony in support thereof, we do not find the trial court's award inequitable under the circumstances ... despite the knowing existence of procedures purportedly set in place to prevent such inequity.

*Jackson v. Wal–Mart Stores, Inc.,* No. 258498, 2005 WL 3191394, at * 9 (Mich.Ct. App. Nov.29, 2005).

Because Wal–Mart will have the opportunity to discredit the experts and their

methodologies, to challenge the accuracy of its own records, and to cross-examine the class representatives and present defenses to their claims at trial, we believe that the circuit court did not abuse its discretion in finding that the "plaintiffs' claims raise broad common questions of law and fact" that are "focused on the corporate-level staffing requirements and policies and on the corporate-level oversight and supervision of daily payroll and staffing[.]"

■ Moreover, all these individual issues relate to damages that can be handled in a random sampling of the class. *See Long v. Trans World Airlines, Inc.*, 761 F.Supp. 1320, 1324 (N.D.Ill.1991). Such a random sampling and statistical analysis will not violate Wal–Mart's due process rights. First, there is no absolute right to individualized determinations of damages. *Id.* at 1325. Second, a statistical model accounts for individual issues including injury in fact and proximate cause. *Id.* at 1326. Finally, Wal–Mart would have the opportunity to contest the proofs of aggregate methods. *See id.* at 1327.

■ Individual issues such as whether a class member suffered injuries relates to the existence of damages. *Id.* at 1326 (allowing sampling method (extrapolation) of damages to be determined on a class basis because the putative class suffered from the same conduct of the defendant even though the mitigation issues of the class members. The plaintiffs sought compensation for lost wages and benefits during the period beginning with their unconditional offer to return to work and ending with each plaintiff's rehire, *Long v. Trans World Airlines, Inc.*, 913 F.2d 1262, 1265 (7th Cir.1990)). "The predominance of the common issues is not defeated simply because individual questions may remain after the common issues are resolved, such as questions of damages or individual de-

fenses." *Craft*, 190 S.W.3d at 383 (citing *Am. Family*, 106 S.W.3d at 488); *see also Ouellette v. Wal–Mart Stores, Inc.*, 888 So.2d 90, 91 (Fla.Dist.Ct.App.2004) (rejecting certification of similar claims because class definition was overbroad, but stating, "We agree with appellants that the individualized nature of their damages claims should not bar certification of the class. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1259, 1273 (11th Cir.2004)").

Thus, the circuit court properly found that "[t]he individual issues have not been shown to predominate or have statistical significance over the broad practices and data available" and that "[t]he predominance of the common issues is not defeated simply because individual questions may remain on questions of damages or possible defenses to individual claims." After our review, we cannot conclude that the circuit court's ruling shocks one's sense of justice and indicates a lack of careful consideration. Although we recognize that individual issues are present, we are confident that the circuit court will proceed in the most expeditious and efficient way possible to manage those individual issues. This appears to be a close case and the named plaintiffs may subsequently fail in their efforts to prove their causes of action or fail to provide sufficient evidence. Even so, these are possibilities that are inappropriate to consider at this juncture. "In determining the propriety of a class action," we do not determine whether the named plaintiffs "have stated a cause of action or will prevail on the merits." *Craft*, 190 S.W.3d at 377. We do, however, note that we are upholding the certification because the trial court can decertify or modify certification before the decision on the merits under Rule 52.08(c)(1), if it determines that the individual issues predominate after further discovery or during

the trial. *See Dale*, 204 S.W.3d at 164. This point is denied.

### The Record Supports Superiority Finding

In addition to requiring that common questions of law and fact predominate, Rule 52.08(b)(3) requires that the court find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Among the factors that the court must consider in addressing superiority are "the difficulties likely to be encountered in the management of a class action." Rule 52.08(b)(3)(D). Wal–Mart argues that resolution of the class claims will require individualized evidence and mini-trials on various issues, and, thus, that the individual issues raise practical difficulties that render the proposed classes unmanageable. According to the courts that have considered class action manageability, this is a matter peculiarly within the trial court's discretion. *Craft*, 190 S.W.3d at 386. "This is because the determination is a practical matter dealing with fact issues with which a trial court has greater familiarity and expertise than has an appellate court." *Id.* at 387.

 Here, the circuit court analyzed whether a class action would be superior to other available methods for the fair and efficient adjudication of the controversy and concluded it was because the case involves small claims by tens of thousands of potential class members who individually would not have the means to finance the expenses of the litigation. To the extent that the claims implicate company-wide policies and data manipulation, the plaintiffs will be relying on statistical analysis of computerized information, the costs of which would be prohibitive for individual plaintiffs. "Without the aggregate pursuit of these claims," stated the circuit court, "it would be economically infeasible for individual class members to access or develop this type of evidence.... Broad patterns could not be examined or ascertained." Class actions which aggregate small claims that could not otherwise be brought are exactly the type of claims that satisfy the superiority requirement. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). This court does not believe that the circuit court abused its discretion in finding that the superiority requirement has been met. This point is denied.

### Subclass Definitions Are Impermissible

 Wal–Mart contends that the class and subclass definitions are overbroad because they include individuals who have suffered no harm.[12] As previously stated, the courts have identified two implied prerequisites to class certification related to class definition, i.e., "that a class exist[s] which is capable of legal definition, and that the representative parties are members of the proposed class." *In re Tetracycline Cases*, 107 F.R.D. 719, 723 n. 4 (W.D.Mo.1985). According to the *Manual for Complex Litigation*, "Class definition is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled to notice in a Rule 23(b)(3) action." MANUAL FOR COMPLEX LITIGATION (THIRD)

---

**12.** The basis of Wal–Mart's contention is that it did nothing improper in editing time records because there were many legitimate reasons for doing so and there was a process in place to edit the records when employees forgot to "swipe" their identification cards before or after a break. The named plaintiffs agree that hourly employees had the opportunity to correct their time records, but that a significant percentage of edits lack the appropriate supporting documentation because they were made without input from or authorization by the hourly employees.

§ 30.14 (1995). In analyzing whether a class exists which is capable of legal definition, the courts look to whether the definition is vague, imprecise, or has a discernable number of potential class members. *See Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis,* 143 F.R.D. 216, 219 (E.D.Mo.1992); *Vietnam Veterans Against the War v. Benecke,* 63 F.R.D. 675, 680 (W.D.Mo.1974). The courts look as well to the issues raised by the pleadings "to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). And the courts require that the named plaintiffs "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Ad Hoc Comm.,* 143 F.R.D. at 220 (internal quotation marks omitted).

 In light of these standards, we believe that only the lock-in subclass definitions are impermissibly overbroad. The definition states:

> A subclass of all current and former hourly employees ... who continued to work and/or were not allowed to leave the defendant's premises immediately after having "clocked out" of defendant's computerized payroll system because of any action, policy or practice of the defendants.[13]

The "and/or" language suggests that an employee who was locked-in but did not work OTC is a class member. The class, however, must include only those who are injured. Because the injury is uncompensated labor, all class members must have worked while OTC. Because the subclass definition will allow employees who did not

work OTC while locked-in, it is impermissibly overbroad. Omitting the "/or" language will cure the definition of its defect.

 As for the remaining class definitions, they are not impermissibly overbroad. The class definitions limit the class to current and former hourly employees who worked in defendants' Missouri stores within a certain time period. There is nothing imprecise about these definitions; they describe a group of individuals that is identifiable and unchanging. The named plaintiffs claim that corporate policies resulted in company-wide staffing shortfalls and wage abuses and testified that they had been short-changed by these policies. Thus, they have shown that they personally have been injured. The named plaintiffs also introduced testimony showing that an ascertainable percentage of employee time records were edited without supporting documentation. Thus, it appears that many of the individuals who would be included in this clearly defined class would be able to claim present harm and would, accordingly, have standing to bring suit in their own right. *Vietnam Veterans,* 63 F.R.D. at 680–81. Whether some class members would choose not to bring suit because, as Wal–Mart suggests, they willingly volunteered to work without pay and were never forced to miss a break, does not change our analysis because they are free to opt out and not participate in the litigation. *See also Lanner v. Wimmer,* 662 F.2d 1349, 1357 (10th Cir.1981) (stating "[i]t is not 'fatal [to class certification] if some members of the class might prefer not to have violations of their rights remedied.' ") (quoting *U.S. Fid. & Guar. Co. v. Lord,* 585 F.2d 860, 873 (8th Cir. 1978)); *Elliott v. ITT Corp.,* 150 F.R.D. 569, 575 (N.D.Ill.1992) (stating that a "class may be certified even though the initial definition includes members who

---

**13.** This quote defines both Sam's Club's and Wal–Mart's Lock-in Subclasses.

have not been injured or do not wish to pursue claims against the defendant," and further noting that "the question of injury to individual class members is deferred until after resolution of the common questions.").

▬ Wal–Mart also contends that "opt in" subclasses cannot be created under Rule 52.08(b)(3) and that these subclasses are impermissibly merit-based and self-defined. The circuit court created four "opt-in" subclasses to deal with those categories of class claimants whose existence cannot be determined from the face of Wal–Mart's electronic time-record databases. These class members are the hourly employees who were either locked in and thus could not leave after they had clocked out or were required to complete their assigned tasks after clocking out. According to Wal–Mart, there are no objective criteria from which members of these subclasses can be ascertained; "rather, class membership turns upon resolution of the merits of each individual [employee's] claims and an [employee] becomes a member of one of the subclasses only upon subjective recollection."

Rule 52.08(c)(2) requires that in any class action maintained under Rule 52.08(b)(3), notice must be provided to the members of the class and "shall advise each member that: (A) the court will *exclude* the member from the class if requested by a specified date[.]" (Emphasis added.) At least one federal court has interpreted a similar Rule 23 provision by finding that the rule does not "authorize an 'opt in' class in the liability stage of a litigation." *Kern v. Siemens Corp.*, 393 F.3d 120, 128 (2d Cir.2004). The court in that case discussed extensive legal commentary, which suggests that Congress prohibited "opt in" classes by implication when it amended Rule 23 in 1966 by adding the "opt out" requirement. *Id.* at 124–

25. The rationale for this interpretation is that:

> [R]equiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people—especially small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step.

*Id.* at 124 (quoting Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L.Rev. 356, 397–98 (1967)). The court also contends that no federal court has explicitly certified an "opt in" class. *Id.* at 125. In ruling that Rule 23 precludes certification of an "opt in" class, the Second Circuit recognized that once a defendant's liability is established in the context of an "opt out" class, the court may be justified in requiring class members to file statements of their claims, i.e., to "opt in," to obtain the ultimate relief. *Id.* at 126–27.

The named plaintiffs here attempt to distinguish *Kern* by pointing out that the entire class was an "opt in" class in that case, but we do not believe that the distinction has any merit. Rule 52.08(c)(4) states that "a class may be divided into subclasses and each subclass treated as a class, and the provisions of this Rule 52.08 shall then be construed and applied accordingly." A reasonable interpretation of this provision is that subclasses must conform to the requirements that apply to classes and, thus, that "opt in" subclasses are not allowed. *See also* Manual for Complex Litigation (Third) § 30.15 (1995) (stating "Each class or subclass must independently satisfy the prerequisites of Rules 23(a) and (b)."). Because we believe that the circuit court can redefine the four "opt in" subclasses as "opt out" subclasses,

we remand with instructions for the court to do so.

## Conclusion

The trial court's determination certifying this matter as a class action is affirmed as modified. The trial court on remand shall redefine the four "opt in" subclasses. Because this matter is before us on an interlocutory appeal, we express no opinion on the merits of the action. *Craft*, 190 S.W.3d at 377.

All concur.