

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| DAVID M. ELSEA and JEANNE MORGAN, Individually and as Class Representatives, | ) ) ) ) | |
| Appellants, | ) ) | WD77687 |
| v. | ) ) ) | OPINION FILED: March 17, 2015 |
| U.S. ENGINEERING COMPANY, a Corporation, and JACKSON COUNTY, MISSOURI, | ) ) ) ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jack N. Peace, Judge**

**Before Special Division:** Mark D. Pfeiffer, Presiding Judge, and
Cynthia L. Martin and Anthony Rex Gabbert, Judges

David M. Elsea and Jeanne Morgan, individually and as class representatives ("Plaintiffs"), appeal from the decision of the Circuit Court of Jackson County, Missouri ("circuit court"), denying class certification. Plaintiffs filed a tort action in the circuit court on behalf of a proposed class of persons exposed to asbestos fibers claimed to have been caused by U.S. Engineering Company's ("Defendant U.S. Engineering") "generation, use, handling, storage, treatment, demolition, removal and disposal of asbestos during the renovation, repair,

maintenance and/or remodeling of the [Jackson County Courthouse]," which is owned, operated, and maintained by Jackson County, Missouri ("Defendant County") (Defendant U.S. Engineering and Defendant County will be referred to collectively as "Defendants"). Plaintiffs seek recovery of compensatory damages for the expense of prospective medical monitoring allegedly necessitated by a defined amount of minimum exposure to asbestos fibers at the Jackson County Courthouse ("Courthouse"). We conclude that the circuit court erred in denying class certification. The circuit court's class certification ruling is reversed, and the case is remanded.

## Factual and Procedural Background

Preliminarily, we address the parties' disagreement regarding how we are to review the facts of this case. Plaintiffs assert that "in class certification determinations, the named plaintiffs' allegations are accepted as true." Defendants contend that we are to "take the evidence and the reasonable inferences therefrom in the light most favorable to the judgment."

Defendants' contention is based on an incorrect perception of the trial court's written decision. The trial court issued its ruling on Plaintiffs' motion for class certification in a document entitled "Findings of Fact, Conclusions of Law and Judgment"[1]—after, as Defendants describe in their appellate briefing, a "four-day evidentiary hearing that, in every procedural aspect, was identical to a bench trial." However, a class certification proceeding is a "hearing," and the resulting decision is an "order,"[2] which is subject to interlocutory appellate review. *See Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997) (stating it is the "content, substance,

---

[1] The circuit court's ruling was thirty pages in length, contained seventy-one paragraphs of "factual findings" and the circuit court's "factual findings" went far beyond determining "whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 222 (Mo. App. W.D. 2007).

[2] Statutes and court rules governing interlocutory appeals on class action certification refer to the circuit court's ruling as an "order." *See* § 512.020(3) ("*Order* granting or denying class action certification"); Rule 52.08(f) ("appeal from an *order* of a circuit court granting or denying class action certification"); and Rule 84.035 ("appeal from an *order* granting or denying class action certification"). (Emphasis added.)

and effect" of the circuit court's ruling—not its title—that determines the document's ruling status on appeal). Though an appealable order is included within the definition of "judgment" set forth in Rule 74.01(a),[3] the designation of an appealable order as a "judgment" does not control our standard of review.

Instead, in the present procedural posture, we have described our review of "the facts" as follows:

> "In class certification determination, the named plaintiffs' allegations are accepted as true." *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 227 (Mo. App. [W.D.] 2007) (noting that arguments which tend to negate allegations from the petition should be ignored because such allegations are taken as true for purposes of a class certification motion). Therefore, the determination of class certification is based primarily upon the allegations in the petition.

*Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 74 (Mo. App. W.D. 2011).

"While some evidence relating to the merits may be considered in determining whether the class certification prerequisites have been met, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Hale*, 231 S.W.3d at 222 (internal citation omitted).

Under this lens of review, the operative facts relating to class certification are as follows: In 1983-84, Defendant County contracted with Defendant U.S. Engineering to perform a retrofit project at the Courthouse in which the Courthouse's air-handling units and corresponding pipes, fittings, and insulation were subject to renovation, repair, maintenance, and/or remodeling. The insulation around the fittings and pipes contained asbestos, of which Defendants were aware. Defendant U.S. Engineering disturbed the asbestos in cutting and wrenching the pipes and fittings wrapped in insulation. The air handling units were not turned off during Defendants'

---

[3] Rule 74.01(a) provides that "'[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." All rule citations are to I MISSOURI COURT RULES – STATE (2014).

3

retrofit project. Dust containing asbestos fibers was blown and tracked throughout the Courthouse resulting in layers of dust accumulated throughout the Courthouse and described by one witness as an asbestos powder coating "that you could run your hands through," it covered "everything in various offices," and "it would be on the floors and get walked out of the entrance to the air handlers and then tracked through the [common] areas . . . and . . . courtrooms."

The asbestos fiber dust was not properly removed and/or abated, such that asbestos fibers remain in the Courthouse today. Plaintiffs' experts testified that unless asbestos is properly removed it will remain in the Courthouse for decades, as asbestos does not decay. These same experts testified that their investigation of the Courthouse revealed markedly increased and "greater than normal background levels" of exposure to asbestos to those persons spending eighty or more hours at the Courthouse in a given year since 1983. These experts similarly concluded that there continues to be elevated levels of asbestos in the Courthouse to this day. Most notably, these experts testified that those persons who have been significantly exposed to asbestos in the Courthouse are at a significantly increased risk for latent disease caused by this elevated asbestos exposure: "either [a disease] they've got and nobody knows about yet or one that will develop in the future."

Plaintiffs filed a class action petition against Defendants alleging claims sounding in negligence and strict liability and sought, *inter alia*, compensatory damages to establish a medical monitoring program for class members. Plaintiffs asserted that the class members have been exposed to dust containing asbestos fibers released by the activities of Defendants at the Courthouse, and that this exposure has created a significantly increased risk of illness or injury, such that there is a reasonable need for early detection and diagnosis. The purpose of the medical monitoring program would be to provide diagnostic testing to detect whether the class

members' asbestos exposure has caused or is in the process of causing an injury or illness. The proposed class consists of and includes:

1. Missouri residents who were employed by the State of Missouri or employed by the County of Jackson, and worked inside the Courthouse for a period of time exceeding two consecutive weeks from 1983 to the present, or because of their duties, were required to work inside the Courthouse for a period of more than 80 hours in a year from 1983 to the present.

2. Missouri residents who, as a result of their employment, were required to spend more than two consecutive weeks in the Courthouse, or over the course of any given year, were required to spend a total of eighty hours in the Courthouse.[4]

Plaintiffs sought class certification pursuant to Rule 52.08(b)(3), asserting that common issues of law and fact would predominate over individual issues.

After a four-day evidentiary hearing, the circuit court concluded the opposite—that individual issues would predominate over common issues—and denied class certification. In its ruling, the circuit court noted that individual issues such as actual asbestos exposure—varying and depending upon date, location, and duration of each class member's presence in the Courthouse—created "the presence of so many individualized issues . . . mak[ing] managing a class action for medical monitoring inordinately difficult. There is a likelihood that individual hearings would be necessary to categorize class members, and to address individual issues of exposure, dose, causation and monitoring protocol."

Plaintiffs sought and received this court's permission to file an interlocutory appeal of the circuit court's class certification decision pursuant to Rule 52.08(f), Rule 84.035, and section 512.020(3).

---

[4] Since the triggering event used to establish tort claims in the subject class action relate to work performed and/or directed by Defendants in 1983-84, we presume that Subclass 2 is similarly limited to the time frame of "1983 to the present." In arguments to both the circuit court and this court, the "1983 to the present" time frame is not disputed by the parties as the applicable time frame for both subclasses. We thus treat the subclass definitions as such.

**Standard of Review**[5]

On appeal, Plaintiffs principally assert that, like the circuit court described in *Meyer ex rel. Coplin v. Fluor Corp.*, 220 S.W.3d 712 (Mo. banc 2007), the circuit court here has failed to appreciate the uniqueness of a medical monitoring claim for damages.

This Court reviews a circuit court's order granting or denying class certification for abuse of discretion. *Id.* at 715. An abuse of discretion occurs when the trial court misapplies the law. *Id.* at 720 ("The circuit court misapplied the law by applying personal injury concepts to Plaintiff's medical monitoring claim and in holding that these individual personal injury issues were predominate over common issues."). *See also Fritzsche v. E. Tex. Motor Freight Lines*, 405 S.W.2d 541, 545 (Mo. App. 1966) ("An abuse of discretion is not merely an error of judgment[,] but consists of a conclusion where the law is overridden or misapplied.").

"A class certification hearing is a procedural matter in which the sole issue is whether plaintiff has met the requirements for a class action." *Meyer*, 220 S.W.3d at 715. "Thus, the trial court has no authority to conduct a preliminary inquiry into whether the plaintiff has stated a cause of action or will prevail on the merits." *Id.* "Although the class certification decision lies in the circuit court's discretion the courts should err in close cases in favor of certification

---

[5] Recognizing that the circuit court treated the proceedings below as more of a "trial" than as a class certification "hearing," Defendants argue in their appellate briefing that our standard of review of the circuit court's ruling must be as follows: "[T]he proper standard requires this Court to take the evidence and the reasonable inferences therefrom in the light most favorable to the judgment."

More particularly, Defendants argue in their appellate briefing:

> Plaintiffs are not entitled to de novo review of the [circuit] court's factual findings. On those issues, this Court must defer to the [circuit] court "unless there is no substantial evidence to support" those findings or the findings are "against the weight of the evidence." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). . . . [I]t is essentially impossible for a party with the burden of proof to demonstrate factual error in a *bench trial*, because the [circuit] court has the right to "disbelieve that party's uncontradicted or uncontroverted evidence." [*White v. Dir. of Revenue*, 321 S.W.3d 298, 305 (Mo. banc 2010)].

(Emphasis added.) This is not, however, appellate review of a "judgment" from a "bench trial." This is an interlocutory appeal from the circuit court's "ruling" on class certification.

6

because the class can be modified as the case progresses." *Id.* "The issue is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether plaintiff has met the requirements for a class action." *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 377 (Mo. App. E.D. 2005) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)). "While some evidence relating to the merits may be considered in determining whether the class certification prerequisites have been met, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Hale*, 231 S.W.3d at 222 (internal citation omitted).[6] "Inasmuch as Rule 52.08(c)(1) provides for de-certification of a class before [a] decision on the merits, we will err on the side of upholding certification in cases where it is a close question." *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 164 (Mo. App. W.D. 2006) (internal quotation omitted).

## Analysis

### *Medical Monitoring Cases*

"In toxic tort cases, there is often no immediately diagnosable physical injury or illness. Instead, the injury is latent and may not be discovered for months or even years." *Meyer*, 220 S.W.3d at 716. To deal with cases involving latent injury, tort law allows plaintiffs compensation for medical monitoring. *Id.* "A medical monitoring claim seeks to recover the

---

[6] Defendants cite to *Blades v. Monsanto Co.*, 400 F.3d 562, 575 (8th Cir. 2005), for the proposition that trial courts are entitled to resolve factual disputes in a class certification setting. Aside from the principle that this court is not bound by precedent from the Eighth Circuit Court of Appeals, *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995), we note that the *Blades* court made clear that any such factual findings by a trial court were "limited to whether, if [Plaintiffs'] basic allegations were true, common evidence could suffice, given the factual setting of the case, to show classwide injury." *Id.* Further, the *Blades* court expressly noted that it was improper for the party opposing certification even to present expert testimony negating facts relating to the merits of the case in a class certification hearing. *Id.* at n.9. Here, the record reflects both that Defendants presented improper expert witness "merits" testimony to the circuit court and that the circuit court improperly relied upon such testimony in reaching its certification ruling. Simply put, the circuit court in the instant case did not evaluate class certification under the rubric of "whether, if [Plaintiffs'] basic allegations were true, common evidence could suffice . . . to show classwide injury." *Id.* at 575.

7

costs of future reasonably necessary diagnostic testing to detect latent injuries or diseases that may develop as a result of exposure to toxic substances." *Id.* "The general consensus that has emerged in [medical monitoring] cases is that a plaintiff can obtain damages for medical monitoring upon a showing that the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." *Id.* at 718 (internal quotation omitted).

Our Missouri Supreme Court set forth the rationale for permitting future medical monitoring as a compensable item of damage in the setting of a tort theory of recovery seeking reasonably necessary diagnostic testing to detect latent injuries or diseases that may develop as a result of exposure to toxic substances:

> As with any claim based in tort law, the injury underlying a medical monitoring claim is the invasion of a legally protected interest. Just as an individual has a legally protected interest in avoiding physical injury, so too does an individual have an interest in avoiding expensive medical evaluations caused by the tortious conduct of others. When a defendant invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations. Even though a plaintiff may not have yet developed a diagnosable physical injury, it is not accurate to conclude that no compensable injury has been sustained. Thus, the theory of recovery for medical monitoring damages is that the plaintiff is entitled, upon proper proof, to obtain compensation for an injury to the legally protected interest in avoiding the cost of reasonably necessary medical monitoring occasioned by the defendant's actions. The injury for which compensation is sought is not a present physical injury. Instead, medical monitoring damages compensate the plaintiff for the quantifiable costs of periodic medical examinations reasonably necessary for the early detection and treatment of latent injuries caused by the plaintiff's exposure to toxic substances. A physical injury requirement is inconsistent with the reality of latent injury and with the fact that the purpose of medical monitoring is to facilitate the early diagnosis and treatment of latent injuries caused by exposure to toxins.

*Id.* at 717-18 (internal citations omitted).

*Class Actions – Rule 52.08*

A class certification decision is a procedural matter. *Id.* at 718 n.7. Rule 52.08 governs the procedure for certifying a class action. The party seeking class certification bears the burden of proof. *Hope*, 353 S.W.3d at 74. "This burden is satisfied if there is evidence in the record, which if taken as true, would satisfy each and every requirement of the rule." *Id.* (internal quotation omitted). "'In class certification determination, the named plaintiffs' allegations are accepted as true.'" *Id.* (quoting *Hale*, 231 S.W.3d at 227) (noting that arguments which tend to negate allegations from the petition should be ignored because such allegations are taken as true for purposes of a class certification motion). "Therefore, the determination of class certification is based primarily upon the allegations in the petition." *Id.*

There are four prerequisites for class certification. The record must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact that are common to the class (commonality); (3) the claims of the representative parties are typical of the class claims (typicality); and (4) the representative parties will fairly and adequately protect the class interests (adequacy). Rule 52.08(a).

Once the Rule 52.08(a) prerequisites are met, the putative class must also satisfy one of the three requirements of Rule 52.08(b). Here, Plaintiffs sought class action certification under Rule 52.08(b)(3), which requires the record to demonstrate that the questions of law or fact common to the class members predominate over questions affecting only individual class members (predominance) and that a class action is superior to other methods of adjudication (superiority). "Moreover, the certified class must meet two additional implied requirements: it must be capable of legal definition, and the representative parties must be members of the putative class." *Hale*, 231 S.W.3d at 222. Defendants argue that we need not consider

Rule 52.08(a) requirements since Plaintiffs fail to satisfy Rule 52.08(b)(3) requirements; in fact, in their appellate briefing, Defendants chose not to provide any response to Plaintiffs' Rule 52.08(a) arguments. However, since the circuit court considered *all* of the Rule 52.08 requirements in its ruling, so shall we. In addressing the propriety of class certification, a court's principal concern is whether the plaintiff has established the requirements for certification. *Hope*, 353 S.W.3d at 74. "[C]ourts must not forget that the underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered." *Id.* (internal quotation omitted).

### *Rule 52.08(a) – Numerosity, Commonality, Typicality, and Adequacy*

### *Rule 52.08(a)(1) Numerosity: "the class is so numerous that joinder of all members is impracticable"*

"[A] class action is to be used where it is not feasible for all persons whose interests may be affected by an action to be made parties to it . . . ." *Sheets v. Thomann*, 336 S.W.2d 701, 709 (Mo. App. 1960). "Rule 52.08(a) does not require that joinder of all the members of a class be impossible, only that it be impracticable." *Dale*, 204 S.W.3d at 167. "A plaintiff does not have to specify an exact number of class members to satisfy the numerosity prerequisite for class certification, but must show only that joinder is impracticable through some evidence or *reasonable, good faith estimate* of the number of purported class members." *Id.* (internal citation omitted). "To support a finding of the numerosity prerequisite of Rule 52.08(a)(1), the trial court can accept 'common sense assumptions.'" *Id.*

In its order denying class certification, the circuit court concluded—given that the proposed class, at minimum, would include those employed at the Courthouse since 1983—that "common sense" dictated that the numerosity prerequisite has been satisfied. We agree with the

10

circuit court's conclusion. Defendants do not contest the circuit court's numerosity finding; thus, we need not discuss it further.

***Rule 52.08(a)(2) Commonality: "there are questions of law or fact common to the class"***

In its order denying class certification, the circuit court concluded that Plaintiffs did not meet their burden of establishing commonality in that the named Plaintiffs' cases would not provide a common answer apt to drive the resolution of the litigation for all the class.

Initially, we note that the rule is written in the disjunctive, and hence, the common question may be one of fact *or* law and need not be one of each. *See* I WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS, § 3:21 (5th ed. 2011).

Rule 52.08(a)(2) does not require that all issues in the litigation be common, only that common questions exist. "[I]f the same evidence will suffice for each member to make a prima facie showing as to a given question, then it is a common question." *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 581 (Mo. App. E.D. 2010) (internal quotation omitted). "[T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Dale*, 204 S.W.3d at 175 (internal quotation omitted). "A single common issue may be the overriding one in the litigation, *despite the fact that the suit also entails numerous remaining individual questions*." *Meyer*, 220 S.W.3d at 716 (emphasis added) (internal quotation omitted); *State ex rel. Am. Family Mut. Ins. Co. v. Clark*, 106 S.W.3d 483, 488 (Mo. banc 2003) (emphasis added) (internal quotation omitted). *See also* I RUBENSTEIN, NEWBERG ON CLASS ACTIONS, § 3:20 ("[E]ven a single [common] question will do."). "[W]hat really matters in class certification is not the raising of common questions, but the ability of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."

11

*Smith v. Mo. Highways & Transp. Comm'n*, 372 S.W.3d 90, 94 (Mo. App. S.D. 2012) (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)).

Here, "[i]t is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiff's case." *Meyer*, 220 S.W.3d at 719. "The significance and extent of toxic exposure is primarily an issue of common proof. Under this theory of liability, the individual factors identified by the circuit court are not particularly relevant because the need for monitoring is based on a common threshold of exposure." *Id.* Plaintiffs alleged and presented evidence relating to: the health hazards of asbestos; the corresponding latency period of asbestos fibers; Defendants' knowledge of the dangers of airborne asbestos fibers, and their disregard of those dangers resulting in the dangerous release of asbestos fibers in the Courthouse; the ongoing presence of asbestos fibers in the Courthouse and the resulting dangers to those exposed to airborne asbestos fibers; and the need for medical monitoring to provide early detection and diagnosis of asbestos-related diseases. In fact, Plaintiffs' experts testified that low-level exposure to asbestos constitutes an excessive risk of harm. Whether that is true or whether only a higher concentration creates a danger is an issue common to all members of the putative class. Ascertaining the danger point—or continuing danger—is critical to the determination of whether putative class members have sustained a legal injury. Generating common answers to these common questions will "drive the resolution of the litigation." *Smith*, 372 S.W.3d at 94.

Instead of accepting Plaintiffs' allegations and evidence as true for the purpose of determining class action prerequisites, the circuit court heard and accepted conflicting expert testimony and evidence presented by Defendants. In so doing, the circuit court effectively "found" certain of Plaintiffs' common questions to be negated by contrary evidence or to be

subject to individualized inquiries into "whether and to what extent [each member of the class] may have breathed in any asbestos dust."

The circuit court erred in refusing to accept the allegations and evidence presented by Plaintiffs as true, *see Hope*, 353 S.W.3d at 74, and erred in focusing on remaining individual questions related to the litigation, *see Meyer*, 220 S.W.3d at 716. Each of the individual factors identified by the circuit court is "not [relevant to] a medical monitoring claim for which there is no necessity of establishing a present physical injury." *Id.* at 719.

The circuit court abused its discretion in finding that the commonality requirement was not met.

### Rule 52.08(a)(3) Typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"

In its order denying class certification, the circuit court concluded that Plaintiffs' claims were not typical of all class members because of the individualized issues that are inherently personal and peculiar to each of the putative class members, such as the level of asbestos exposure.

"Typicality means that the class members share the same interest and suffer the same injury." *Hale*, 231 S.W.3d at 223. Hence:

> [t]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff. If the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory, factual variations in the individual claims will not normally preclude class certification.

*Id.* (citations omitted) (internal quotations omitted). Stated another way, the typicality requirement is met:

> even where there is a variance in the underlying facts of the representative's claim and the putative class members' claims, *as long as the claim arises from the same event or course of conduct of the **defendant*** as the class claims, the underlying

13

facts are not markedly different, and the conduct and facts give rise to the same legal or remedial theory.

*Dale*, 204 S.W.3d at 170-71 (emphasis added). The typicality requirement tends to merge with the commonality requirement because "[b]oth serve as guideposts for determining whether . . . the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Here, while the circuit court identified individual variances in the underlying asbestos exposure to the Plaintiffs' claims as compared to putative class members' claims, the circuit court fails to recognize that *all* of the claims "arise[ ] from the same event or course of conduct of the *defendant*." *See Dale*, 204 S.W.3d at 169 (emphasis added). Plaintiffs' claims raise asbestos exposure issues harmonious with all putative class members as to the event or course of conduct that caused the asbestos exposure—Defendants' work at the Courthouse in 1983-84.

The circuit court abused its discretion in finding that the typicality requirement was not met.

### Rule 52.08(a)(4) Adequacy: "the representative parties will fairly and adequately protect the interests of the class"

In its order denying class certification, the circuit court found that Plaintiffs could not adequately represent all the putative class members because they were not members of the proposed non-government employee subclass. As to class counsel, the circuit court concluded that the adequacy requirement was met.

"Because class actions determine the rights of absent members, due process requires that absent class members be fairly and adequately represented." *Dale*, 204 S.W.3d at 172. "[The adequacy] prerequisite applies both to the named class representatives and to class counsel."

14

*Vandyne v. Allied Mortg. Capital Corp.*, 242 S.W.3d 695, 698 (Mo. banc 2008) (internal quotation omitted). "In determining whether the adequacy prerequisite is satisfied as to a class representative, the circuit court must consider whether the named representative has, or may develop during the course of litigation, any conflicts of interest that will adversely affect the interests of the class." *Id.* (internal quotation omitted). "[T]he interest of the [class] representatives and that of the absent [class] members must be compatible, not antagonistic." *State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 123 (Mo. App. W.D. 1984). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation omitted).

First, the named plaintiffs are represented by counsel who are very experienced with class action and asbestos litigation. Defendants do not contest the circuit court's adequacy finding as to class counsel. Thus, there is no question that the class is "adequately" represented by class counsel.

Second, while the two subclasses consist of those employed in the Courthouse and those whose employment or duties required them to be present in the Courthouse, the interests of these subclasses can hardly be said to be contingent or dependent upon the identity of the *employer*.[7] Instead, the interests of these subclasses are identical—whether the putative class members of each subclass have been exposed to a minimum amount of asbestos exposure since 1983. Plaintiffs, as class representatives, allegedly suffered the same minimum exposure as all putative

---

[7] The circuit court concluded that Subclass 1 was a "government employee" subclass and Subclass 2 was a "non-government employee" subclass and based its adequacy ruling on the notion that a "government employee" could not adequately represent the interests of "non-government employees." Yet, a close reading of the subclass definitions does not yield the "government vs. non-government" distinction. In fact, a member of Subclass 1 could arguably be a member of Subclass 2 as well. The real crux of the class definition is on a minimum amount of exposure to asbestos on or after 1983.

class members: all were exposed to asbestos while present in the Courthouse for at least eighty hours. The interests of Plaintiffs and the putative class members are entirely compatible and virtually identical.

The circuit court abused its discretion in finding that the adequacy requirement was not met.

<em><strong>Rule 52.08(b)(3) – Common Question Class Action</strong></em>

***Rule 52.08(b)(3) Predominance: "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members"***

In its order denying class certification, the circuit court determined that individual issues involving causation and damages predominated over common issues; thus, Plaintiffs failed to meet their burden to establish predominance. The circuit court found that Plaintiffs' claims would involve individualized inquiries into whether class members were actually exposed above background levels, whether class members face a significantly increased risk of developing a disease relative to what would be the case in the absence of exposure, and whether a monitoring regime would be reasonably medically necessary for each class member.

"The 'predominance' requirement . . . does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which 'predominate' over the individual issues." *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012) (internal quotation omitted). "The predominant issue need not be dispositive of the controversy or even be determinative of the liability issues involved." *Id.* (internal quotation omitted). "Further, predominance is not precluded when there needs to be an inquiry as to individual damages." *Id.* In other words:

> The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. To satisfy this requirement, not every single issue must be common to all class members. In fact, the

16

predominance requirement can be satisfied if there is one single common issue that is the overriding issue in the litigation. This single predominant issue need not even be dispositive of the case. [T]he fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance.

*Smith v. Am. Family Mut. Ins. Co.*, 289 S.W.3d 675, 688 (Mo. App. W.D. 2009) (citations omitted) (internal quotations omitted).

Here, the medical monitoring issue affecting the entire putative class is based upon the common and overriding fact of a threshold level of asbestos exposure caused by a single source—Defendants' 1983-84 air-handler retrofit project. Instead of focusing on the common and predominant fact of exposure, the circuit court focused on the perceived need for the court to inquire as to individual damage issues affecting different class members, in part basing its conclusions upon weighing conflicting expert testimony and erroneously relying upon expert testimony for Defendants that negates the testimony of Plaintiffs' experts.

In a virtually identical medical monitoring class action case involving a claim of toxic exposure and a denial of class action certification on the grounds that "individual issues will necessarily predominate over common issues," our Missouri Supreme Court stated:

> Class membership is restricted by definition to persons who have received specified, medically significant minimum levels of exposure to the toxins discharged from the Doe Run smelter. It is the common fact of exposure to a set of toxins from a single source that is the common and overriding issue in Plaintiff's case. The significance and extent of toxic exposure is primarily an issue of common proof. Under this theory of liability, the individual factors identified by the circuit court are not particularly relevant because the need for monitoring is based on a common threshold of exposure. Whether Plaintiff is able to prove this theory is, at this stage, irrelevant because the sole issue is whether Plaintiff met the requirements for a cause of action, not whether Plaintiff will ultimately prevail.
>
> . . . .
>
> The circuit court misapplied the law by applying personal injury concepts to Plaintiff's medical monitoring claim and in holding that these individual personal injury issues were predominate over common issues.

17

*Meyer*, 220 S.W.3d at 719-20.

Bound by the *Meyer* precedent, we conclude that the predominance requirement of Rule 52.08(b)(3) has been met. For, like *Meyer,* "[i]t is the common fact of exposure to [asbestos] from a single source" (Defendants' 1983-84 Courthouse air-handling unit retrofit project), at a level which Plaintiffs allege to be medically significant, "that is the common and overriding issue in Plaintiff[s'] case." *Id.* at 719.

The circuit court abused its discretion in finding that the predominance requirement was not met.

**Rule 52.08(b)(3) Superiority: "a class action is superior to other available methods for the fair and efficient adjudication of the controversy"**

"In addition to requiring that common questions of law and fact predominate, Rule 52.08(b)(3) requires that the court find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Hale*, 231 S.W.3d at 229 (internal quotation omitted). "The superiority requirement requires the trial court to balance, in terms of fairness and efficiency, the merits of a class action in resolving the controversy against those of alternative available methods of adjudication." *Dale*, 204 S.W.3d at 181 (internal quotation omitted). "The balancing must be in keeping with judicial integrity, convenience, and economy." *Id.* "Class actions which aggregate small claims that could not otherwise be brought are exactly the type of claims that satisfy the superiority requirement." *Hale*, 231 S.W.3d at 229 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)). In balancing the relative merits of class action versus alternative methods of adjudicating the controversy, courts should consider "the inability of the poor or uninformed to

18

enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Dale*, 204 S.W.3d at 182 (internal quotation omitted).

In examining the superiority requirement, courts may consider the manageability of the case as a class action. Rule 52.08(b)(3)(D). Here, the circuit court concluded that a medical monitoring class action would not be manageable. "'Manageability' is a consideration that encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Craft*, 190 S.W.3d at 386 (internal quotation omitted). "Generally . . . class action status will be denied on the ground of unmanageability only when it is found that efficient management is *nearly impossible*; some courts have stated that there is a presumption against refusing to certify a class on manageability grounds." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 140 (2nd Cir. 2001) (internal quotation omitted), *superceded by statute on other grounds*. "[D]enial of class certification because of suspected manageability problems is disfavored . . . because a court refusing to certify a class action on the basis of vaguely perceived manageability obstacles is acting counter to the policy behind [the class certification rule], and because that court is discounting unduly its power and creativity in dealing with a class action flexibly as difficulties arise." *Freedman v. Amalgamated Sugar Co. (In re Sugar Indus. Antitrust Litig.)*, 73 F.R.D. 322, 356 (E.D. Pa. 1976). *See also Craft*, 190 S.W.3d at 386 ("Failure to certify an action on the sole ground that it would be unmanageable is disfavored . . . .").

In its order denying class certification, the circuit court found that a class action was not superior to other available methods of adjudicating a medical monitoring claim because the presence of so many individualized issues would make managing a class action inordinately difficult. The circuit court concluded that the superior method of resolving medical monitoring

19

claims would be individual actions in which each plaintiff could make an informed decision whether or not to waive his or her medical privilege, the Defendants would have the right to defend themselves, and whether medical monitoring would be appropriate or contra-indicated could be explored.

The circuit court reiterated its concerns regarding "individual factors" as a basis for justifying a denial of class action as the superior method of resolving the controversy. However, where our Missouri Supreme Court has expressly concluded that "individual factors" are not *relevant* in a medical monitoring claim, we again fail to see how the circuit court may rely upon "individual factors" as a basis for denying class certification—whether as a basis for its predominance or its superiority conclusions.

The circuit court identifies its concerns with such "individual factors" as individual health histories and individual preferences as to whether a class member would be willing to sign a medical authorization or that an individual class member would even be willing to participate in medical monitoring. These class management concerns again ignore the distinction of a medical monitoring claim from a personal injury claim. Since it is *testing*, not *treatment*, that lies at the core of a medical monitoring claim, "there is no necessity of establishing a present physical injury." *Meyer*, 220 S.W.3d at 719. "Liability in [personal physical or economic injury cases is] premised upon individualized determinations of the nature and extent of manifested damages. There is no need for such proof in a medical monitoring case." *Id.* Furthermore, the circuit court is empowered to craft class participation rules designed to protect both the putative class members and the Defendants. For example, there is nothing prohibiting the circuit court from establishing an "opt out" procedure whereby putative class members who do not wish to participate in medical monitoring would have the choice of "opting out" of the class action.

20

Conversely, for those putative class members wishing to participate in the class action, the circuit court has the power to dictate measures enabling Defendants the opportunity to assert defenses to certain categories of class members within the class action.

We conclude that the superiority requirement has been met, given:

- the undisputed large number of putative class members;

- the nature of the class proceeding as a medical monitoring claim in which it is unrealistic to think that individual class members would pursue individual claims against Defendants outside of this proposed class action;

- the desirability of resolving asbestos exposure questions common to all class members (as identified in our "commonality requirement" and "predominance requirement" discussion) under the umbrella of one class action forum; and

- the power vested in the circuit court to devise a process to manage the class action proceeding.

Ultimately, the circuit court's superiority ruling is nothing more than a repeat of its predominance ruling—relying upon "individual factors" as a basis for denying class certification in a medical monitoring class proceeding even though our Missouri Supreme Court has indicated such "individual factor" concerns are not relevant to class certification in the medical monitoring setting. Accordingly, the circuit court abused its discretion in finding that the superiority requirement was not met.

### *Class Definition – Definiteness and Membership*

While Rule 52.08 does not explicitly demand a proper class definition, "such a requirement clearly underlies each of the mandatory elements for certification." *Hope*, 353 S.W.3d at 77 (internal quotation omitted). Accordingly:

21

[a] precise class definition is necessary to identify properly those entitled to relief, those bound by the judgment, and those entitled to notice. The class definition must enable the Court to determine objectively who is in the class, and thus, who is bound by the ruling. While the class definition must be sufficiently definite so that it is administratively feasible to identify members of the class, this does not mean the class needs to be so ascertainable from the definition that every potential member can be identified at the commencement of the action.

*Id.* (citations omitted) (internal quotation marks and parentheses omitted). "[T]he courts have identified two implied prerequisites to class certification related to class definition, i.e., that a class exist[s] which is capable of legal definition, and that the representative parties are members of the proposed class." *Hale*, 231 S.W.3d at 229 (internal quotation omitted).

Plaintiffs proposed a class composed of Missouri residents exposed to asbestos in the Courthouse. Plaintiffs divided the class into two subclasses. Subclass 1 consists of Missouri residents who: (i) were employed by the State of Missouri; or (ii) were employed by Jackson County; and (iii) worked inside the Courthouse for a period of time exceeding two consecutive weeks from 1983 to the present; or (iv) because of their duties, were required to work inside the Courthouse for a period of more than eighty hours a year from 1983 to the present. Subclass 2 consists of Missouri residents who: (i) as a result of their employment, were required to spend more than two consecutive weeks (ten days) in the Courthouse; or (ii) over the course of any given year, were required to spend a total of eighty hours in the Courthouse.

In its class certification order, the circuit court concluded that Plaintiffs' proposed class definition was neither ascertainable nor administratively feasible. The circuit court described proposed Subclass 1 as the "governmental employee" subclass, into which Plaintiffs presumably fit, and described Subclass 2 as the "non-governmental employee" subclass, of which neither named Plaintiff was a member. The circuit court concluded that Subclass 2 was not represented

22

by a proposed class representative and, therefore, was "inappropriate."  On these bases related to class definition, the circuit court denied class certification.

As to ascertainability, "[a] sufficiently definite class exists to justify class certification[ ] if its members can be ascertained by reference to objective criteria."  *Dale*, 204 S.W.3d at 178 (internal quotation omitted).  Again, we refer to our Missouri Supreme Court's decision in *Meyer* for guidance on the appropriateness of a class definition in the context of a medical monitoring class action in which exposure to toxins is the basis for the class proceeding and class definition.  In *Meyer*, the Supreme Court reversed the circuit court's ruling denying class certification on a medical monitoring class claim in which "[c]lass membership is restricted by definition to persons who have received specified, medically significant minimum levels of exposure to the toxins discharged from the Doe Run smelter."  220 S.W.3d at 719.

Similarly, here, class membership is restricted by definition to persons who have worked in the Courthouse or who were "required to spend" (for example, jurors) a minimum period of time (eighty hours or ten days), and have received specified, medically significant minimum levels of exposure to asbestos fibers present in the Courthouse from 1983 to the present.  There is nothing imprecise about this definition.  One can objectively determine who is a member of the class.[8]  Whether Plaintiffs, as the named class representatives, are defined as "workers" or persons "required to spend" a minimum amount of time in the Courthouse, they are "members of the class" because they, like putative class members, were exposed to asbestos in the Courthouse based on the objective exposure criteria.

As to administrative feasibility, the circuit court expressed concern that the class definition would result in a proliferation of mini-hearings to determine residency and time of

_____

[8] In fact, through initial discovery requests, information and documents have been produced identifying hundreds, and even thousands, of putative class members.

23

exposure.  Individualized fact-finding necessary in determining class membership does not necessarily render a class definition infirm.  *Dale*, 204 S.W.3d at 181.  As Plaintiffs point out, in class action cases, class members are required to affirm their membership in a class by verifying satisfaction of class criteria.

The circuit court also expressed concern that the time-of-exposure criteria made the class difficult to administer.  However, disputed questions of fact are not a matter for the circuit court's consideration at this juncture of the proceeding.  Plaintiffs alleged and then established through expert testimony that eighty hours was the reasonable minimum exposure to put a person at risk of developing an asbestos-related disease years later.  The trial court was required to accept Plaintiffs' allegations as true.  *Hope*, 353 S.W.3d at 74.  Any factual dispute about the minimum time of asbestos exposure triggering the need for monitoring is for the jury to decide at trial.

Plaintiffs' class definition complies with necessary prerequisites for application and use in the subject proceeding.  The circuit court abused its discretion in finding that Plaintiffs' proposed class was not properly defined.

## Conclusion

The circuit court's judgment denying class certification is reversed, and the case is remanded for further proceedings consistent with our ruling today.

_____
Mark D. Pfeiffer, Presiding Judge

Cynthia L. Martin and Anthony Rex Gabbert, Judges, concur.

24