

# Missouri Court of Appeals

## Southern District

### Division One

MICHAEL MOORE,　　　　　　　　　　)
PAULA ROBERTSON, and　　　　　　　)
NANCY SALZMAN,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Appellants,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　No. SD36682
　　vs.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　**Filed: August 23, 2021**
SCROLL COMPRESSORS, LLC, and　　)
EMERSON ELECTRIC CO.,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Respondents.　　　　　　)

APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Kenneth M. Hayden, Judge

## AFFIRMED

Appellants sought class certification and medical monitoring in a suit against Respondents. The circuit court denied class certification, sustained Respondents' motion for summary judgment, and entered judgment for Respondents. We affirm.

## Background

Appellants Moore and Robertson filed suit against Respondents in late 2013. They have alleged that they and others are current or former employees who worked at Respondents' plant in Lebanon, Missouri, where they were exposed to metalworking

fluids ("MWFs") during their employment. They claim Respondents knew or should have known that exposure to those MWFs can cause respiratory problems as well as other illnesses and diseases, and that Respondents acted tortiously regarding these risks, resulting in "lung impairment and other diseases that have not yet fully manifested." They sought certification of a class and stated four theories of recovery: premises liability, negligence, fraudulent concealment, and "medical monitoring." For each, an award of damages was sought to establish a court-supervised trust that would fund a "medical monitoring program for class members in order to recover medical expenses reasonably certain to be incurred in the future for costs of reasonably necessary diagnostic testing for early detection and treatment of latent injuries or disease that may develop."

Anticipating a challenge to their adequacy as class representatives, Moore and Robertson sought leave to amend their petition "for the limited purpose of adding an additional class representatives [sic] and removing previously dismissed claims." The motion was granted over Respondents' objection. Appellant Salzman was added as a plaintiff and proposed class representative in 2018.

Appellants presented testimony from two medical experts in support of class certification. One expert testified, among other things, "The symptoms [of MWF-related lung disease] occur at the time of exposure, or shortly thereafter[,]" and, "symptoms would be acute and would be at the time of exposure. Even in chronic, recurrent exposures, it's going to be at the time of exposure, and that one's going to be persisting over days to weeks." He further testified that unless a clinician has a high suspicion of MWF-related lung disease, it is "a difficult diagnosis to make," so the time it takes to get a proper diagnosis can be "much longer than the latency to have the onset of symptoms." This expert's recommended medical monitoring program would consist of physical exam

with medical history, pulmonary functioning testing, high resolution chest tomography, and blood work. All of these tests already have been performed on the named plaintiffs.

Appellants' other medical expert testified, "There is no latency period for metalworking fluid lung disease." He had never seen a patient who had an MWF-related lung disease without some type of symptom, which could range from mild to severe. He was not aware of any studies that suggest persons who have no respiratory issues while exposed to MWFs subsequently develop symptoms after they leave employment and exposure ceases. He testified, "If somebody left and absolutely has no symptoms and no other abnormalities, it's not likely then that they're going to develop [MWF-related lung disease after] a completely symptom-free period with no other abnormalities . . . ."

The Occupational Safety and Health Administration ("OSHA") requires medical monitoring for workers exposed to lead, asbestos, and silica, but not for workers exposed to MWFs. OSHA has visited Respondents' plant but has not recommended a medical monitoring program for employees.

Salzman testified that she worked at Respondents' plant from 1997-1998 and again from 1999-2017. She was a cigarette smoker for about 50 years. She noticed shortness of breath when exerting herself, which she attributed to smoking cigarettes. She quit smoking more than a decade prior to the class certification hearing. In 2015, Salzman sought medical advice and underwent a series of tests for her shortness of breath. She was diagnosed with restrictive lung disease. She did not report any breathing problems to Respondents and she voluntarily terminated her employment for reasons unrelated to her breathing problems.

The circuit court entered a 15-page order detailing its reasons for denying class certification. The court noted that neither Appellants nor their experts could identify any

case in Missouri or any other jurisdiction in which a court had certified a class or awarded a medical monitoring remedy for MWF exposure. A class action was found not to be superior because Appellants all alleged present injuries that could be pursued through personal injury suits, their experts testified to no or virtually no latency between exposure and the development of MWF-related symptoms, and Appellants provided no authority for the proposition that latency in diagnosis or the potential for misdiagnosis is a basis to certify a class for medical monitoring.

The court also found Appellants were not typical of the class they sought to represent because they already have obtained extensive testing and have been diagnosed with present physical injuries, which is all the proposed medical monitoring program would provide to the proposed class. Moore and Robertson were tested by and received a diagnosis from Appellant's expert, and Salzman was tested by and received a diagnosis from her treating physicians.

Respondents then moved for summary judgment, which the circuit court granted on three grounds:

1. "[M]edical monitoring is not necessary for [Appellants] under Missouri law because they are not at risk of developing a latent injury in the future that has not already manifested."

2. "[Appellants] have already received extensive diagnostic testing and a diagnosis and thus have already received everything the proposed medical monitoring program could provide. Accordingly, their claim for medical monitoring is moot."

3. Appellants all allege present physical injury and two of the three already have instituted personal injury suits. Medical monitoring is not necessary for any of Appellants, and the personal injury suits brought by Moore and Robertson are in conflict with the remedy of medical monitoring.

4

## Legal Principles

We review an order granting or denying class certification for abuse of discretion. ***Meyer ex rel. Coplin v. Fluor Corp.***, 220 S.W.3d 712, 715 (Mo. banc 2007). Class certification or denial "is a procedural matter in which the sole issue is whether plaintiff has met the requirements for a class action." ***Id.*** "'[T]he underlying question in any class action certification is whether the class action device provides the most efficient and just method to resolve the controversy at hand, all things considered.'" ***Elsea v. U.S. Eng'g Co.***, 463 S.W.3d 409, 418 (Mo.App. 2015) (quoting ***Hope v. Nissan N. Am., Inc.***, 353 S.W.3d 68, 74 (Mo.App. 2011)).

Rule 52.08[1] governs the procedure for certifying a class action and includes four prerequisites to class certification. ***Meyer,*** 220 S.W.3d at 715. These prerequisites are referred to as numerosity, commonality, typicality, and adequacy. ***Elsea***, 463 S.W.3d at 418. Once these prerequisites are met, a class action can be maintained only by satisfaction of one of the requirements in Rule 52.08(b). ***Meyer,*** 220 S.W.3d at 715. Two additional requirements are implied: the class must be capable of legal definition, and the representative parties must be members of the putative class. ***Elsea,*** 463 S.W.3d at 418.

"The party seeking class certification bears the burden of proof. This burden is satisfied if there is evidence in the record, which if taken as true, would satisfy each and every requirement of the rule." ***Id.*** at 417 (internal citation and quotation marks omitted).

A class certification decision is independent of the ultimate merits of the suit; however, to identify relevant issues and make a meaningful determination, the court must

---

[1] All rule references are to Missouri Court Rules (2018), unless otherwise indicated.

understand the applicable substantive law and the scope and nature of the claim. ***Meyer,***

220 S.W.3d at 716.

> "While some evidence relating to the merits may be considered in determining whether the class certification prerequisites have been met, the court must look only so far as to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class."

***Elsea,*** 463 S.W.3d at 416 (quoting ***Hale v. Wal-Mart Stores, Inc.***, 231 S.W.3d 215,

222 (Mo.App. 2007)).

We review summary judgment *de novo,* which we will discuss in more detail

below. ***Green v. Fotoohighiam***, 606 S.W.3d 113, 115 (Mo. banc 2020).

## Class Certification (Points I and II)

Appellants claim the court erred in denying class certification because they

satisfied the superiority (Point I) and typicality (Point II) requirements. We consider

typicality first, as it is one of the four prerequisites listed in Rule 52.08(a).

The typicality element was described in ***Elsea***:

> Typicality means that the class members share the same interest and suffer the same injury. Hence[,] the burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff. If the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory, factual variations in the individual claims will not normally preclude class certification. Stated another way, the typicality requirement is met: even where there is a variance in the underlying facts of the representative's claim and the putative class members' claims, as long as the claim arises from the same event or course of conduct of the defendant as the class claims, the underlying facts are not markedly different, and the conduct and facts give rise to the same legal or remedial theory. The typicality requirement tends to merge with the commonality requirement because both serve as guideposts for determining whether the class claims are so interrelated that the interests of the class members will be fairly and adequately protected.

463 S.W.3d at 420 (internal citations, quotation marks, formatting, and emphasis

omitted).

Appellants argue Salzman[2] is a typical member of the class because she and other potential class members all work or worked for the same employer, all were exposed to MWFs while working, and their claims all arise from the same event or course of conduct by Respondents. These considerations, if taken as true, all would favor typicality. But did Salzman "suffer the same injury", *id.*, as the unnamed class members?

Appellants' goal in filing the suit and seeking class certification is "to establish a medical monitoring program for class members in order to recover medical expenses reasonably certain to be incurred **in the future** for costs of reasonably necessary diagnostic testing for early detection and treatment of **latent** injuries or disease that **may** develop." (Emphasis added.) The evidence supports the court's finding that Salzman already has obtained extensive testing (in fact all of the testing her expert would recommend) and she has been diagnosed with restrictive lung disease. The expenses for these tests have already been incurred, and her disease is present, not latent. In short, she has received, albeit at her own expense, all the proposed medical monitoring program would provide to the class. Furthermore, Salzman's own experts cast considerable doubt as to the latency of MWF-related lung disease. Although there were some considerations that favored typicality, we cannot say that the court abused its discretion in ruling as it did.

Appellants fall back to the position that even if typicality was lacking, the court should have given them leave to substitute another class representative. Appellants anticipated that the named plaintiffs' adequacy as class representatives would be challenged – that was the stated reason for amending the petition to add Salzman as a

---

[2] Appellants make no argument that Moore and Robertson are typical members of the class.

party. That motion was granted years into the case and prior to the hearing on class certification. We see no request to substitute or name a different class representative at any time in the 17 months between the denial of class certification and the hearing on Respondents' motion for summary judgment. A trial court is under no duty to grant leave to amend *sua sponte*. ***Gross v. A New Missouri, Inc.***, 591 S.W.3d 489, 494 (Mo.App. 2019). Point II is denied.

Although lack of typicality alone would support the denial of class certification, we also find no abuse of discretion in the court's superiority ruling. Appellants alleged class certification pursuant to Rule 52.08(b)(3) which requires, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

> As with typicality, the superiority requirement was described in ***Elsea***:
>
> The superiority requirement requires the trial court to balance, in terms of fairness and efficiency, the merits of a class action in resolving the controversy against those of alternative available methods of adjudication. The balancing must be in keeping with judicial integrity, convenience, and economy. Class actions which aggregate small claims that could not otherwise be brought are exactly the type of claims that satisfy the superiority requirement.

463 S.W.3d at 423 (internal citations and punctuation omitted).

Appellants argue that a class action is superior because the proposed class numbers in the thousands, it would be more efficient to resolve the MWF-exposure issue in one forum, any personal injury case filed by a class member would be distinct from the medical monitoring case, and there is no indication the class would be difficult to manage. Appellant takes issue with the circuit court's focus on lack of latency for MWF-related diseases and how this feature distinguishes this case from medical monitoring cases for

exposure to known toxic substances such as lead or asbestos, alleging that the court dug too far into the merits of the claim rather than focusing on class certification.

The circuit court did not determine the merits of the claim, only what was necessary to decide the class issue. The court did not determine if the plaintiffs or the class was exposed to dangerous levels of MWF, whether MWF is a toxic or dangerous substance, if employees' risk of disease significantly increased due to exposure, or if Respondents acted tortiously regarding the exposure of employees to MWFs.

By the very language of Rule 52.08(b)(3), the circuit court must determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Medical monitoring is a unique remedy. Our supreme court has observed that this remedy arose in toxic exposure cases where plaintiffs often have no symptoms or diagnosable physical injury immediately or shortly after exposure. *Meyer,* 220 S.W.3d at 716-17. It was the latency of the onset of the symptoms or disease and the need for detection that distinguished medical monitoring from other remedies available to plaintiffs with present physical injuries in personal injury cases. *Id.*

In this case, Appellants are alleging that the class suffers from "lung impairment and other diseases that have not yet **fully manifested**." (Emphasis added.) Stated another way, they are claiming the class members have a present physical injury or disease they may not know they have (undiagnosed) or that may grow more severe over time. Accordingly, Appellants' proposed program provides no ongoing testing or monitoring if an initial evaluation for MWF-related respiratory disease is negative.[3]

---

[3] According to Appellants' expert, "I think it is reasonable if you've done an adequate evaluation, . . . no breathing abnormalities, normal HRCT chest and you go out the door and you're never exposed again that you're not going to develop disease thereafter."

A present physical injury, whether mild or severe, is inconsistent with the purpose of the medical monitoring remedy as described in ***Meyer*** and ***Elsea***. "The injury for which compensation is sought is not a present physical injury[,]" rather, it is "compensation for an injury to the legally protected interest in avoiding the cost of reasonably necessary medical monitoring occasioned by the defendant's actions." ***Meyer***, 220 S.W.3d at 718. It also is inconsistent with the testimony of Appellants' own experts, who all but foreclosed the possibility that a person who was asymptomatic when removed from MWF exposure would subsequently develop an MWF-related disease.

Why does this matter for the purpose of class certification? Because **all** of the claims would be for a present physical injury, not an asymptomatic, undiagnosable disease at present that, due to latency, may develop at some point in the future and therefore necessitates medical monitoring. Certification of a class for medical monitoring as proposed would not be superior or more efficient because the same issue would vex both the proposed class and each individual member.

The circuit court did not abuse its discretion in considering latency and differences between this case and other medical monitoring cases when ruling on class certification. Point I is denied.

**Summary Judgment (Point III)**

Appellants claim summary judgment was erroneous because there was evidence that Salzman will benefit from medical monitoring.[4] Salzman stated causes of action for

---

[4] It appears that the circuit court granted summary judgment based on the unique qualities of the medical monitoring remedy and Appellants' inability to avail themselves of that particular remedy. Although harm and remedy are related concepts, we must not put the cart before the horse by conflating damages sought with the plaintiff's alleged injury. In Missouri, medical monitoring is not a separate tort claim or cause of action; rather, it is a remedy or compensable item of damage when liability is established under traditional tort theories of recovery. ***Meyer***, 220 S.W.3d at 717. We are unaware of any cases, and the parties cite none, in which summary judgment was granted based not on the inability to prove some type of damage,

premises liability, negligence, and fraudulent concealment; and the trial court granted Respondents summary judgment on those claims.[5] We review the granting of the summary judgment *de novo.* ***Fotoohighiam***, 606 S.W.3d at 115. As very recently reiterated by the Supreme Court, "this standard of review does not alter that appellants always bear the burden of establishing error whatever the standard of review." ***City of De Soto and James Acres v. Michael L. Parson, Governor of the State of Missouri, et al.***, No. SC98891, slip op. at *6 n.3 (Mo. banc July 22, 2021). Rule 84.13(a) prohibits our consideration of allegations of error in any civil appeal that were not briefed.

Appellants' argument that mere evidence existed of *some* fact will not preclude summary judgment because the court exclusively looks to the step-by-step procedure mandated by Rule 74.04 to determine whether there is a genuine issue of *material* fact. Appellants fail to identify *material* facts that demonstrate Respondents are not entitled to judgment as a matter of law. "'A material fact in the context of summary judgment is one from which the right to judgment flows.'" ***Columbia Mut. Ins. Co. v. Heriford***, 518 S.W.3d 234, 240 (Mo.App. 2017) (quoting ***Goerlitz v. City of Maryville***, 333 S.W.3d 450, 453 (Mo. banc 2011)).

Appellants fail to identify in the record and explain any material issues regarding any of the elements required under any of the causes of action listed above or the affirmative defenses movants pleaded and identify those in the record. Accordingly, we

---

but on the unavailability of a particular remedy requested. Furthermore, "[t]he prayer for relief . . . is not a part of the petition." ***Prindable v. Walsh***, 69 S.W.3d 912, 914 (Mo.App. 2002). "If sufficient facts are pleaded and proved, the court may give appropriate relief, and is not confined to the relief sought in the petition." ***Id.*** at 915.

[5] Although Appellants Moore and Robertson are parties to this appeal, the third point relied on and argument thereon only address Appellant Salzman. "An issue not raised in the points relied on or argued in the argument section of the brief is deemed abandoned on appeal." ***Lanham v. Div. of Employment Sec.***, 340 S.W.3d 324, 327 (Mo.App. 2011). Accordingly, any claim of error or argument regarding the propriety of summary judgment as to Appellants Moore and Robertson is deemed abandoned.

must find that appellants failed to meet their burden of establishing error. We affirm the trial court on these three counts.

Salzman also attempted to state a separate cause of action for medical monitoring in one count. Missouri law does not recognize medical monitoring as a separate cause of action, *Meyer*, 220 S.W.3d at 717. Point III is denied.

## Conclusion

The judgment of the trial court is affirmed.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS